UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KENNETH R. BROWN, individually
and on behalf of a Class of similarly
situated Washington residents,

                    Plaintiff,

          v.

CONSUMER LAW ASSOCIATES,
LLC, et al.,

                    Defendants.

NO:  11-CV-0194-TOR

ORDER RE: DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT, CERTIFICATION OF
PLAINTIFF CLASS AND MOTION
TO STRIKE

BEFORE THE COURT are Plaintiff's Motion for Class Certification (ECF No. 25), Defendants' Motions for Summary Judgment (ECF Nos. 45 and 59) and Defendants' Motion to Strike the Declaration of Joseph Gusmano (ECF No. 91). The Court heard oral argument on these motions on May 30, 2012.  Toby J. Marshall and Matthew Zuchetto appeared on behalf of the Plaintiff, Kenneth R. Brown.  Christopher N. Weiss appeared on behalf of Defendants Consumer Law Associates, LLC, Jimmy B. Persels, and Neil J. Ruther.  Leslie R. Weatherhead

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 1

1  and Geana Van Dessel appeared on behalf of Defendants EFA Processing, L.P. and

2  Debt Relief Options, LLC.  Also before the Court is Plaintiff's unopposed Motion

3  to Amend Complaint (ECF No. 124), heard without oral argument.  The Court has

4  reviewed the motions, the responses, and the record and files herein and is fully

5  informed.

6                                         BACKGROUND

7          This is a class action lawsuit filed on behalf of Washington consumers for

8  alleged violations of the Washington Debt Adjusting Act ("DAA").  Plaintiff has

9  sued for monetary and injunctive relief under the Washington Consumer Protection

10  Act ("CPA") and for breach of fiduciary duty.  Plaintiff has moved to certify a

11  class consisting of all Washington residents who contracted with Defendant

12  Consumer Law Associates ("CLA") for debt adjusting services from April 18,

13  2007, to present.

14          Defendants oppose class certification and have moved for summary

15  judgment on the ground that they are exempt from regulation under the DAA.

16  Defendants raise two related arguments in support of this motion.  First, they

17  contend that licensed attorneys (as well as their agents) are categorically exempt

18  from regulation pursuant to RCW 18.28.010(2)(a).  In the alternative, Defendants

19  maintain that *their* attorneys are exempt under a more narrow reading of the statute

20  because CLA provides debt adjusting services "solely incidental to" the practice of

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 2

law.  These motions involve the same set of operative facts and will be addressed

simultaneously.

FACTS

Consumer Law Associates provides debt relief services to consumers across

the country.  One of the services offered by CLA is a "debt settlement" program

which aims to settle a customer's outstanding debts to credit card companies and

other creditors for less than full value.  Upon enrolling a new customer in this

program, CLA creates a customized debt-reduction plan based upon the customer's

total outstanding debt and his or her ability to make fixed monthly payments.

Once enrolled in the program, the customer makes monthly deposits into a

dedicated savings account from which CLA subsequently disburses funds to

creditors pursuant to negotiated settlement agreements.  CLA charges its customers

various one-time, recurring and contingent fees for this service.

CLA has a unique marketing strategy.  Unlike many of its competitors, CLA

markets its debt settlement program as a legal service provided by licensed

attorneys.  Consistent with this strategy, CLA portrays itself to the outside world as

a "multijurisdictional law firm" with associate attorneys across the country.

Ruther Decl., ECF No. 50, at ¶¶ 2-3.  Although the debt settlement program is a

"cornerstone" of its business, CLA also offers its customers "unbundled" legal

services such as "preparing answers to complaints, answering interrogatories and

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 3

demands for production of documents, and preparing responses to motions for

summary judgment for *pro se* use by the client."  Ruther Decl., ECF No. 50, at ¶¶

6-7.

The vast majority of CLA's attorneys are employed as independent

contractors.  These "field attorneys" are trained on CLA's business model, given

access to CLA's information technology systems, and supervised by senior

attorneys at CLA's home office.  Pursuant to their employment contracts, these

field attorneys perform a narrow range of pre-defined "tasks" for each customer in

exchange for small fixed fees.  In general, these tasks include providing an initial

telephone consultation, reviewing customers' records each month, and being

available to answer questions.  Zuchetto Decl., Exhibit S, ECF No. 36, at 384.

While some of CLA's services are provided by licensed attorneys, the vast

majority of its debt settlement program is administered by two non-legal

companies.  The first of these companies, Defendant Debt Relief Options, LLC

("DR Options"), actively recruits new customers through advertisements and direct

media campaigns.  The second company, EFA Processing, L.P. ("EFA"), provides

a wide array of back-end support services.  In addition to providing "general

customer support services," EFA regularly communicates with CLA's customers

1  and their creditors on behalf of CLA.  In exchange for these services, CLA pays

2  EFA Processing a substantial portion of the fees paid by its customers.[1]

3      The scope of the services provided by CLA is described in detail in a

4  standard form contract signed by each of its customers.  Among other things, this

5  contract specifies that "CLA [will] assist client in the resolution of outstanding

6  debts ("Enrolled Debts") with the following [enumerated] creditors by way of

7  negotiation of payment plan or lump sum settlement[.]"  ECF No. 29-1 at 6.  The

8  contract also specifies the amount that the customer must remit to CLA each month

9  and explains the process by which CLA will negotiate with creditors.  The contract

10  further specifies that CLA will charge the following fees: (1) an "initial

11  Consultation Fee" of $199.00; (2) a "Retainer Fee of 8%" of the total contracted

12  debt, amortized over the first 12 months of the agreement; and (3) a "monthly

13  service fee" of $85.00.  ECF No. 29-1 at 7.

14

15

16

17  [1] Approximately eighty-seven percent (87%) of the net fees paid to CLA by

18  Washington customers were ultimately passed through to EFA Processing as

19  payment for administrative support services.  Marshall Decl., ECF No. 84-9, at 44-

20  45.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 5

Finally, CLA's standard form contract specifies that a customer may engage CLA to provide certain debt-related legal services on an ad-hoc basis for an additional fee:

> [A] creditor's collection efforts may include filing a lawsuit against you.  In the event you are sued, for a small additional fee, we will assist you in preparing an answer to such suit and will negotiate with the creditor's attorney on your behalf.  We will <u>not</u> go to court with you or file an appearance on your behalf, as the cost of doing so would be prohibitive.  We will advise you on what the creditor can do, if anything, with a judgment and will work with you to revise your debt reduction plan if it's necessary to serve your interests.

> \*     \*     \*

> **Authorization for Additional Legal Fees.**  As an active client of the Firm, if you decide you need additional legal services because your creditors have pursued litigation against you, you authorize the release of up to $65 from the funds you paid into escrow to pay additional legal services you may require.  You understand that $65 will purchase a phone consultation and the preparation of one document in response to a creditor suit.  Fees can be higher based on the complexity of the situation and the timeline required to respond.  You understand that this attorney will not represent you in litigation, but will assist you in preparing appropriate documents and for any possible appearance at trial.  No attorney will be responsible for preparing an answer to any action against you unless you provide Consumer Law Associates, LLC with such documents at least 10 days [sic].

ECF No. 29-1 at ¶¶ 4, 14 (emphasis in original).

## DISCUSSION

### I.     CLA Defendants' Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment in favor of a moving party who demonstrates "that there is no

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 6

1    genuine dispute as to any material fact and that the movant is entitled to judgment

2    as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary

3    judgment bears the burden of demonstrating the absence of any genuine issues of

4    material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For purposes of

5    summary judgment, a fact is "material" if it might affect the outcome of the suit

6    under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

7    49 (1986). A dispute over any such fact is "genuine" only where there is sufficient

8    evidence from which a reasonable jury could find in favor of the non-moving

9    party. *Id.* at 248. When ruling on a summary judgment motion, a court construes

10   the facts, as well as all rational inferences therefrom, in the light most favorable to

11   the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

12          In Washington, the business of consumer debt settlement is regulated by the

13   Washington Debt Adjusting Act ("DAA"), RCW 18.28.010, *et seq*. As a

14   "remedial statute enacted to stem the numerous unfair and deceptive practices rife

15   in the growing debt adjustment industry," the DAA provides several important

16   protections to Washington consumers. *Carlsen v. Global Client Solutions, LLC*,

17   171 Wash.2d 486, 498, 256 P.3d 321 (2011) (internal quotation marks and citation

18   omitted). Most notably for purposes of this litigation, the DAA prohibits debt

19   adjusters from (1) charging an initial fee in excess of $25.00; (2) retaining more

20

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 7

than 15% of any single payment made by a debtor as a fee for services rendered. RCW 18.28.080.

Although the DAA's regulations are broad in scope, they are statutorily circumscribed to "debt adjusters" engaged in the business of "debt adjusting." RCW 18.28.010.  By statute, "debt adjusting" includes "the managing, counseling, settling, adjusting, prorating, or liquidating of the indebtedness of a debtor, or receiving funds for the purpose of distributing said funds among creditors in payment or partial payment of obligations of a debtor."  RCW 18.28.010(1).  A "debt adjuster," in turn, includes "any person engaging in or holding himself or herself out as engaging in the business of debt adjusting for compensation."  RCW 18.28.010(2).

The statutory definition of "debt adjuster" also contains several enumerated exclusions.  One of these exclusions applies to licensed attorneys.  This exclusion provides, in relevant part,

The term ["debt adjuster"] shall not include:

Attorneys-at-law, escrow agents, accountants, broker-dealers in securities, or investment advisors in securities, while performing services solely incidental to the practice of their professions.

RCW 18.28.010(2)(a).  The construction and application of this exclusion are central to the outcome of Defendants' motion for summary judgment.  For the reasons discussed below, Defendants cannot avail themselves of this exclusion.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 8

A. <u>Application of the DAA to Licensed Attorneys in General</u>

Defendants have moved for summary judgment on the ground that licensed attorneys are categorically exempt from regulation under the DAA pursuant to RCW 18.28.010(2)(a). Defendants acknowledge that the statute contains important qualifying language—"while performing services solely incidental to the practice of their professions"—but maintain that this language applies only to "investment advisors in securities" pursuant to the so-called "last-antecedent" rule. Stated differently, Defendants read RCW 18.28.010(2)(a) to exempt all "attorneys-at-law" rather than "attorneys-at-law . . . while performing services solely incidental to the practice of their professions."

This argument is unpersuasive. In Washington, resort to the last-antecedent rule as a canon of statutory construction is only appropriate "[w]here no contrary intention appears" in the statute. *Davis v. Gibbs*, 39 Wash.2d 481, 483, 236 P.2d 545, 546 (1951); *see also City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wash.2d 504, 509, 833 P.2d 381, 383 (1992) (employing last-antecedent rule to resolve ambiguity created by statutory text). Here, RCW 18.28.010(2)(a) plainly refers to attorneys-at law, escrow agents, accountants, securities brokers and investment advisors in "the practice of their *professions*." RCW 18.28.010(2)(a) (emphasis added). Given that the word "professions" is plural rather than singular, the qualifying language logically applies to *each* of the listed professions. Had the

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 9

1   Washington Legislature intended to create a *categorical* exemption for attorneys,

2   escrow agents, accountants, and securities brokers and a *conditional* exemption for

3   investment advisors, it easily could have done so.[2]   By listing and referring to these

4   professions in the aggregate, however, the Legislature expressed a clear intent for

5   the "solely incidental to" modifying language to apply to all five listed

6   professions—including attorneys-at-law.

7           Given that the statute does not present a facial ambiguity, the court need not

8   examine its legislative history.  *Milner v. Dep't of Navy*, ___ U.S. ___, 131 S. Ct.

9   1259, 1267 (2011) ("Legislative history . . . is meant to clear up ambiguity, not

10  create it."); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568

11  (2005) ("Extrinsic materials have a role in statutory interpretation only to the

12  extent they shed a reliable light on the enacting Legislature's understanding of

13  otherwise ambiguous terms."); *Dot Foods, Inc. v. Washington Dep't of Revenue*,

14  166 Wash.2d 912, 926 n.4, 215 P.3d 185, 191 (2009) ("Because the statute is not

15  _____

16  [2] Defendants suggest that use of the plural word "professions" was necessary to

17  maintain "numerical symmetry" with the phrase "investment advisors."   ECF No.

18  141 at 3.  Contrary to Defendants' assertions, investment advisors are engaged in a

19  single *profession*.  Accordingly, "their profession" is the only numerically

20  symmetrical modifier of the phrase "investment advisors."

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 10

ambiguous and we can derive its meaning from its face, we need not turn to legislative history to discern the legislative intent behind the provision."). In any event, the Court has reviewed the 2012 amendments to the DAA and the Washington Supreme Court's decision in *Carlsen* and has determined that neither has any bearing on the attorney exemption set forth in RCW 18.28.010(2)(a).[3]

Next, Defendants argue that construing RCW 18.28.010(2)(a) as a categorical exemption in favor of all attorneys is necessary in order to avoid an absurd result. Specifically, Defendants contend that an attorney cannot be considered a "debt adjuster" subject to regulation under the DAA because a separate provision of the act mandates that a "debt adjuster . . . shall not . . . furnish legal advice or perform legal services of any kind." *See* RCW 18.28.130. Thus, according to Defendants, requiring attorneys to comply with the DAA would

---

[3] Defendants have not provided a copy of or reliable citation to the 1978 report which purportedly states that "The statutory definition of debt adjuster excludes attorneys, accountants, banks, credit unions, loan companies, insurance companies, and certain non-profit organizations." *See* ECF No. 47 at 8-9. Accordingly, the Court is unable to evaluate the potential relevance of this report to the modern statutory text.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 11

1    necessarily preclude them from rendering the very legal services that they were

2    hired to provide.

3         This argument is similarly unpersuasive.  Although it would certainly be

4    absurd to preclude an attorney from providing debt-related legal services, the Court

5    concludes that the Washington Legislature never intended such a result.  As Judge

6    Edward F. Shea held in a companion case currently pending in this District, the

7    purpose of RCW 18.28.130 is "to identify those debt-adjusting services that may

8    cross the line into the practice of law, and to expressly prohibit a non-attorney debt

9    adjuster from engaging in the listed legal services."  *Bronzich v. Persels & Assocs.*,

10   No. 10-CV-0364-EFS, Ct. Rec. 155 at 18-19 (E.D. Wash. Oct. 14, 2011).

11   Accordingly, "[RCW] 18.28.130 does not affect the DAA's application to

12   attorneys who do not qualify for the services-solely-incidental-to-legal-practice

13   exemption" set forth in RCW 18.28.010(2)(a).  *Id.* at 19.  The Court finds this

14   reasoning persuasive and adopts it fully.

15        Finally, Defendants argue that subjecting attorneys to the DAA's regulations

16   would violate separation of powers principles.  Because governance of the legal

17   profession is vested exclusively in the judicial branch, Defendants argue, requiring

18   attorneys to comply with the DAA's fee restrictions would constitute improper

19   encroachment on the judicial branch's regulatory authority by the Washington

20   Legislature.  While it is true that the Washington Supreme Court "has an exclusive,

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 12

1    inherent power to admit, enroll, discipline and disbar [Washington] attorneys,"

2    *Short v. Demopolis*, 103 Wash.2d 52, 62, 691 P.2d 163, 169 (1984), this power

3    does not preclude the Washington Legislature from regulating the "entrepreneurial

4    aspects" of the practice of law which implicate the public interest.  *Id.* at 65, 691

5    P.2d 163, 170.  Indeed, requiring attorneys to comply with the DAA and CPA

6    when providing debt-adjustment services "is no different than applying other

7    generally applicable statutes, such as the criminal laws, to attorneys."  *See Lang v.*

8    *Daniel N. Gordon, PC*, 2011 WL 62141 at *3 (W.D. Wash. Jan. 6, 2011) (holding

9    that requiring attorneys to comply with the Washington Collection Agency Act and

10   the CPA when attempting to collect debts on behalf of a third party does not

11   violate separation of powers principles).  Thus, the Court concludes that requiring

12   attorneys to comply with the DAA does not violate separation of powers

13   principles.

14       B.  Application of the DAA to CLA's Licensed Attorneys in Particular

15       In the alternative, CLA argues that its attorneys are exempt from regulation

16   under the DAA because they provide debt adjusting services "solely incidental to"

17   the practice of law.  Here again, Judge Shea's analysis of the attorney exemption in

18   *Bronzich*, *supra*, is instructive.  In that case, the Court held that RCW

19   18.28.010(2)(a)'s exemption for attorneys who provide debt adjusting services

20   "solely incidental to" the practice of law "does not apply to an attorney or law firm

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 13

1    *specializing* in debt adjustment." *Bronzich*, *supra*, at 15 (emphasis added).

2    Because this exemption was created for "the attorney whose law practice is his

3    primary business with debt adjustment provided solely incidental to legal

4    services," the Court reasoned, it does not protect "an attorney whose primary

5    practice is adjusting debts." *Id.* at 16-17.  Stated differently, attorneys "whose

6    primary business is providing debt-adjustment services" are subject to regulation

7    under the DAA.  *Id.* at 16.  Thus, the dispositive inquiry is whether CLA's

8    attorneys are primarily engaged in "debt adjusting" or another type of legal

9    practice.

10        As noted above, "debt adjusting" involves "the managing, counseling,

11   settling, adjusting, prorating, or liquidating of the indebtedness of a debtor, or

12   receiving funds for the purpose of distributing said funds among creditors in

13   payment or partial payment of obligations of a debtor."  RCW 18.28.010(1).  Here,

14   there is ample evidence from which a reasonable jury could find that CLA is

15   primarily engaged in providing debt adjusting services.  First, CLA's standard

16   form contract states that "CLA is a law firm which assists customers with a method

17   of debt resolution known as debt settlement."  ECF No. 29-1 at 11.  Under the

18   heading "Subject Matter," the contract recites that that "Client is requesting CLA

19   to assist client in the resolution of outstanding debts ('Enrolled Debts') with the

20   following creditors by way of negotiation of payment plan or lump sum

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 14

settlement." ECF No. 29-1 at 6.  The contract further summarizes the customer's

"Enrolled Debts" by creditor name, account number, balance owed, and estimated

settlement percentage.  ECF No. 29-1 at 6.  The contract then recites that, "Based

on your disposable income, we estimated how much you can pay to all of your

creditors each month. . . . We will offer each creditor a percentage settlement based

on your estimated settlement percentage as set forth in this agreement, and your

available funds." ECF No. 29-1 at 6.  Finally, the contract lists the fees that the

customer must pay to CLA in exchange for the services described in the

agreement.  ECF 29-1 at 7.

By contrast, CLA's standard form contract contains very few references to

the provision of other legal services.  Indeed, the plain language of the contract

appears to contemplate that a customer will only require other legal services in the

event that he or she is sued by a creditor:

> You understand that until a creditor accepts our offer, the creditor may keep
> trying to collect the debt.  The creditor's collection efforts may include filing
> a lawsuit against you.  In the event you are sued, for a small additional fee,
> we will assist you in preparing an answer to such suit and will negotiate with
> the creditor's attorney on your behalf.  We will <u>not</u> go to court with you or
> file an appearance on your behalf, as the cost of doing so would be
> prohibitive.  We will advise you on what the creditor can do, if anything,
> with a judgment and will work with you to revise your debt reduction plan if
> it's necessary to serve your interests.

\*   \*   \*

**Authorization for Additional Legal Fees.**  As an active client of the Firm,
if you decide you need additional legal services because your creditors have

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 15

pursued litigation against you, you authorize the release of up to $65 from the funds you paid into escrow to pay [for] additional legal services you may require.  You understand that $65 will purchase a phone consultation and the preparation of one document in response to a creditor suit.  Fees can be higher based on the complexity of the situation and the timeline required to respond.  You understand that this attorney will not represent you in litigation, but will assist you in preparing appropriate documents and for any possible appearance at trial.  No attorney will be responsible for preparing an answer to any action against you unless you provide Consumer Law Associates, LLC with such documents at least 10 days. [sic].

ECF No. 29-1 at 6-7 (emphasis in original).  The fact that CLA's standard form contract discusses the provision of other legal services as a *contingency* strongly suggests that any such services are ancillary to CLA's representation.  Similarly, the fact that a customer must pay *additional* fees for *additional* legal services clearly suggests that any such services are secondary to CLA's debt settlement services.

Moreover, Plaintiff has offered evidence that approximately eighty-seven percent (87%) of the net fees paid to CLA by Washington customers between April 30, 2007, and November 3, 2011, were ultimately passed through to EFA Processing as payment for administrative support services.  Marshall Decl., ECF No. 84-9, at 44-45.  The fact that CLA retained only thirteen percent (13%) of the fees it collected—and relinquished the remainder to a company that provides no legal services whatsoever—further supports a conclusion that providing legal services is not CLA's primary business.  In sum, a reasonable jury could conclude that CLA offers the "traditional" legal services identified above "solely incidental

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 16

1    to" its debt adjustment practice rather than vice versa.  Accordingly, Defendants'

2    motion for summary judgment on Plaintiff's *per se* CPA claim must be denied.

3           C.  <u>Application of the DAA to EFA Processing and DR Options</u>

4           Defendants EFA Processing and DR Options also claim protection under the

5    DAA's attorney exemption.  Like CLA, they argue that (1) attorneys are exempt

6    from the DAA's regulations as a matter of law; and (2) in the alternative, CLA's

7    attorneys are exempt because they provide debt adjusting services "solely

8    incidental to" the practice of law.  RCW 18.28.010(2)(a).  These Defendants argue

9    that they are similarly exempt from regulation because they acted "solely on behalf

10   of and under the control and supervision" of CLA's licensed attorneys.  ECF No.

11   61 at 4, ¶19.  Stated differently, EFA Processing and DR Options claim that they

12   may benefit from the attorney exemption on an agency theory.

13          As discussed above, there is no categorical exemption for attorneys under

14   the DAA.  Accordingly, CLA's attorneys are only exempt from regulation to the

15   extent that they provided debt adjusting services "solely incidental to" the practice

16   of their professions.  RCW 18.28.010(2)(a).  Given that the Court has denied

17   CLA's motion for summary judgment on this issue, it must similarly deny EFA

18   Processing's and DR Options' motions with respect to the attorney exemption.

19          EFA Processing and DR Options also argue that Plaintiff's *per se* CPA

20   claim against them must fail because Plaintiff never contracted with them directly.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 17

1    As Judge Shea held in *Bronzich*, however, a contractual relationship is not a

2    prerequisite to liability under the DAA.  *Bronzich*, *supra*, at 26-27.  Given that

3    Plaintiff has presented sufficient evidence from which a rational jury could

4    conclude that EFA Processing and DR Options either directly violated or aided and

5    abetted CLA in violating the DAA, their motion for summary judgment must be

6    denied.

7            D. <u>Application of the DAA to Persels and Ruther as Individuals</u>

8            Defendants Jimmy Persels and Neil Ruther are the owners and officers of

9    CLA.  They are also both licensed to practice law in Maryland.  Plaintiff argues

10   that these defendants cannot avail themselves of the DAA's attorney exemption

11   because they are not licensed to practice law in the State of Washington.

12   Assuming *arguendo* that Plaintiff is correct (*see Bronzich*, *supra*, at 13-14), the

13   Court need not address this issue.  Because it is undisputed that CLA served its

14   Washington customers through Washington-licensed attorneys, the licensure status

15   of Persels and Ruther is irrelevant.  Similarly, the fact that Persels and Ruther

16   happen to be attorneys has no bearing on the issue of whether they may be held

17   personally liable as the owners and officers of CLA for *per se* CPA violations.  *See*

18   *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wash.2d 298, 553

19   P.2d 432 (1976).

20   //

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 18

1    **II.    Class Certification**

2        Class certification is governed by Rule 23(a) and (b) of the Federal Rules of

3    Civil Procedure.  Rule 23(a) provides that a plaintiff seeking class certification

4    must demonstrate that "(1) the class is so numerous that joinder of all members is

5    impracticable; (2) there are questions of law or fact common to the class; (3) the

6    claims or defenses of the representative parties are typical of the claims or defenses

7    of the class; and (4) the representative parties will fairly and adequately protect the

8    interests of the class."  Fed. R. Civ. P. 23(a).  In evaluating a class certification

9    motion, a court must perform a "rigorous analysis" to determine whether each of

10   these prerequisites has been satisfied.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161

11   (1982).  "Frequently that 'rigorous analysis' will entail some overlap with the

12   merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S.

13   __, 131 S. Ct. 2541, 2551 (2011); *see also Ellis v. Costco Wholesale Corp.*, 657

14   F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may*

15   consider the merits to the extent that they overlap with class certification issues;

16   rather a district court *must* consider the merits if they overlap with the Rule 23(a)

17   requirements.") (emphasis in original).

18       A class action plaintiff must also demonstrate that certification is appropriate

19   under Rule 23(b).  Where, as here, the plaintiff seeks certification of a so-called

20   "damages class" under Rule 23(b)(3), he or she must demonstrate that (1)

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 19

"questions of law or fact common to class members predominate over any

questions affecting only individual members;" and (2) "a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3).  As the party seeking class certification, the plaintiff bears

the burden of establishing that the foregoing requirements have been satisfied.

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

For the reasons discussed below, the Court concludes that class certification

is appropriate as to Plaintiff's claim for *per se* violations of the Washington

Consumer Protection Act.  In light of  counsel's representation at the class

certification hearing that Plaintiff's claims for non-*per se* violations of the CPA

and for breach of fiduciary duty were plead as "alternatives" to Plaintiff's *per se*

CPA claim, the Court will not decide whether class certification is appropriate as

to those claims.  Similarly, the Court will decline to certify Plaintiff's claims for

injunctive relief, as Plaintiff has failed to address the requirements for certification

of such a claim under Rule 23(b)(2).

A. Rule 23(a) Prerequisites

1. *Numerosity*

To satisfy Rule 23(a)(1), a proposed class must be "so numerous that joinder

of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Whether joinder

would be impracticable depends upon the facts and circumstances of each case and

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 20

does not, as a matter of law, require any specific minimum number of class members." *Smith v. Univ. of Washington Law School*, 2 F. Supp.2d 1324, 1340 (W.D. Wash. 1998). In general, however, a class consisting of forty or more members is presumed to be sufficiently numerous. *In re Washington Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011).

Here, the proposed class consists of approximately 894 members, all of whom resided in the State of Washington when they retained CLA's services. The parties appear to agree that the class is sufficiently numerous, and the Court independently finds that joinder of 894 individual claims would be impracticable under the facts and circumstances of this case. Accordingly, Rule 23(a)(1) is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of this rule, "[c]ommonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation and citation omitted). At its core, the commonality requirement is designed to ensure that class-wide adjudication will "generate

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 21

common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (emphasis in original) (internal quotation and citation omitted).

Here, the class members' claims for *per se* violations of the CPA easily satisfy the commonality requirement. Each of these claims is based upon a common legal theory: that Defendants violated the DAA by (1) charging an initial fee in excess of $25.00; and/or (2) charging service fees in excess of 15% of any one individual payment. This theory necessarily leads to one dispositive question of fact: whether each class member was in fact charged (1) an initial fee in excess of $25.00; and/or (2) a service fee in excess 15% of any one individual payment.

The fact that each class member will be required to prove liability individually—*e.g.*, by submitting individualized billing statements—does not preclude class certification. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2011) ("It is not necessary that all questions of fact and law be common to satisfy the rule. We have found the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.") (internal quotations, citations and modifications omitted). Similarly, the fact that each class member will be required to submit individualized proof of damages is insufficient to preclude class certification. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (noting that "the mere fact that there might be differences in damage calculations is not

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 22

sufficient to defeat class certification"); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").  At bottom, the class members' claims present nearly identical questions of law and fact which will invariably generate common answers capable of driving the litigation.  *See Dukes*, 131 S. Ct. at 2551.

### 3. *Typicality*

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement serves to ensure that "the interest of the named representative aligns with the interests of the class."  *Wolin*, 617 F.3d at 1175. Factors relevant to the typicality inquiry include "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984.  Stated differently, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Id.*; *see also Stearns*, 655 F.3d at 1019 ("The typicality requirement looks to whether the claims of the class representatives are typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Here, Plaintiff's *per se* CPA claim is typical of the claims of his fellow class members.  As noted above, Plaintiff has alleged that Defendants violated the DAA by (1) charging an initial fee in excess of $25.00; and/or (2) charging service fees in excess of 15% of any one individual payment.  His fellow class members will be asserting identical claims involving a similar injury and arising from a same course of conduct.  *See Ellis*, 657 F.3d at 984.  Given that Plaintiff and his fellow class members all signed the same standard form contract upon entering CLA's debt settlement program, Plaintiff's claim is quite typical of the claims of the class.  Accordingly, the typicality requirement is satisfied.

### 4.  *Adequacy of Representation*

The final prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement applies to both the named plaintiff and to his attorney.  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985.

With regard to representation by class counsel, the Court finds that Plaintiff's counsel is capable of fairly and adequately representing the class.  The

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 24

attorneys who have entered notices of appearance on Plaintiff's behalf have
extensive experience in prosecuting class actions in the consumer protection
context. *See* Zuchetto Decl., ECF No. 31, at ¶¶ 2-9; Marshall Decl., ECF No. 28,
at ¶¶ 2-8; Scott Decl., ECF No. 134, at ¶¶ 2-20. These attorneys are also familiar
class actions involving alleged violations of the Debt Adjusting Act and the
Consumer Protection Act. *See* Scott Decl., ECF No. 134, at ¶¶ 4, 8-9, 20.
Accordingly, the Court finds that Plaintiff's counsel are well-qualified to serve as
class counsel.

Defendants have launched several personal attacks against Plaintiff in an
attempt to demonstrate that he cannot adequately represent the class. First,
Defendants argue that Plaintiff "lacks the requisite credibility" to serve as a class
representative. ECF No. 95 at 23-26. The crux of this argument is that Plaintiff
has leveled false accusations against CLA in his complaint and gave evasive or
misleading answers to opposing counsel during his deposition. Second,
Defendants contend that Plaintiff does not understand the basis for his claims and
has effectively ceded control of the litigation to his attorneys. ECF No. 95 at 26-
29. In support of this argument, Defendants suggest that Plaintiff did not review
the complaint before it was filed and has not formally hired any of the attorneys
who have entered notices of appearance on his behalf.

1    These criticisms are not well-taken.  The Court has reviewed the transcript

2    of Plaintiff's deposition testimony and finds that there is no reason to question

3    Plaintiff's credibility or his dedication to serving as a class representative.

4    Although Plaintiff was clearly mistaken about certain facts (most notably the fact

5    that CLA had successfully settled three of his credit card debts), these appear to be

6    nothing more than innocent mistakes.  Furthermore, the transcript reflects that

7    Plaintiff generally understands the nature of his claims and that he has actively

8    assisted counsel in litigating this case.  Finally, there is no merit to Defendants'

9    assertion that Plaintiff has not formally hired any of the attorneys who have

10   appeared on his behalf.  Plaintiff testified unequivocally that he engaged the Scott

11   Law Group to represent him in this case.  Brown Dep., ECF No. 96, at 150-53.

12   Defendants also contend that Plaintiff cannot adequately represent the class

13   due to a conflict of interest with other class members.  The force of this argument

14   is that Plaintiff's interests as a *former* CLA client directly conflict with the interests

15   of *current* CLA clients.  Defendants have specifically identified three conflicting

16   interests of current CLA clients: (1) keeping their financial difficulties

17   confidential; (2) maintaining the attorney-client privilege; and (3) receiving

18   ongoing debt-related services from CLA.  According to Defendants, a former CLA

19   client cannot adequately represent these interests.

20

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 26

As an initial matter, there is no reason why Plaintiff cannot adequately represent the interests of all class members in keeping their financial difficulties confidential or in maintaining the attorney-client privilege. Indeed, all potential class members—whether former or current CLA clients—have similar interests in keeping their financial matters private and in maintaining the attorney-client privilege. The fact that Plaintiff has voluntarily relinquished these interests by agreeing to act as a named class representative does not mean that other class members must make similar sacrifices. To the extent that participating in this litigation will require class members to disclose sensitive financial information, the Court will take affirmative steps to ensure that the disclosure remains private. Similarly, to the extent that class members will be required to disclose information that is protected by the attorney-client privilege, the Court will order that any such disclosure in this litigation does not constitute a waiver of the privilege. *See* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court[.]"). In any event, class members who are concerned about these issues will be given an opportunity to exclude themselves from this litigation. *See* Fed. R. Civ. P. 23(c)(2)(B)(v).

There is, however, a legitimate conflict of interest between Plaintiff and current CLA clients with regard to ongoing debt-related services. Because

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 27

1    Plaintiff is no longer enrolled in CLA's debt settlement program, it does not appear

2    that he can adequately represent the interests of class members who are currently

3    enrolled in the program and who would like to continue paying off their debts.

4    Indeed, Plaintiff's efforts to declare his contract with CLA void *ab initio* and to

5    recover all funds not previously distributed to creditors (*see* RCW 18.28.090)

6    would not serve the interests of current clients who, for one reason or another,

7    would prefer to continue making payments under their contracts.[4]  Accordingly,

8    the Court finds that Plaintiff cannot "fairly and adequately protect" the interests of

9    class members who are currently enrolled in CLA's debt settlement program.  Fed.

10   R. Civ. P. 23(a)(4).

11        In order to avoid a conflict of interest between Plaintiff and class members

12   who are current CLA clients, the Court will subdivide the class into two subclasses

13   pursuant to Rule 23(c)(5).  The first subclass will consist generally of former CLA

14   clients.  This class will be certified outright.  The second subclass will consist

15   generally of class members who are currently enrolled in CLA's debt settlement

16

17   _____

18   [4] It is possible, for example, that certain clients will elect to continue making

19   monthly payments under their contracts with CLA in order to avoid defaulting on

20   existing settlement agreements with their creditors.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 28

1    program.  This class will be *provisionally* certified pending class counsel's

2    identification of a suitable representative.

3         B.  Rule 23(b)(3) Requirements

4         Having concluded that Plaintiff has satisfied the prerequisites for class

5    certification identified above, the Court must now determine whether certification

6    is proper under Rule 23(b).  Here, Plaintiff has sought certification of a so-called

7    "damages class" pursuant to Rule 23(b)(3).  Before certifying such a class, a court

8    must find that (1) "the questions of law or fact common to class members

9    predominate over any questions affecting only individual members;" and (2) "a

10   class action is superior to other available methods for fairly and efficiently

11   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

12        1.  *Do Common Questions of Law or Fact Predominate?*

13        As discussed above, the class members' claims for *per se* violations of the

14   CPA present common questions of law and fact.  For purposes of Rule 23(b)(3),

15   the relevant inquiry is whether these common questions *predominate* over

16   individualized questions.  *See Wolin*, 617 F.3d at 1172 ("While Rule 23(a)(2) asks

17   whether there are issues common to the class, Rule 23(b)(3) asks whether these

18   common questions predominate.").  Although Rule 23(a)(2) and Rule 23(b)(3)

19   both address commonality, "the 23(b)(3) test is 'far more demanding,' and asks

20   'whether proposed classes are sufficiently cohesive to warrant adjudication by

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 29

representation.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Here, the questions of law and fact common to all class members clearly predominate over questions unique to individual class members. With regard to the class members' claims for *per se* violations of the CPA, the common question of law is whether Defendants violated the DAA by charging fees in excess of those set forth in RCW 18.28.080(1), while the common question of fact is whether class members were charged (1) an initial fee in excess of $25.00; and/or (2) service fees exceeding 15% of any one individual payment.

By contrast, the class members' claims for *per se* violations of the CPA present very few individualized questions. Indeed, the only individualized questions relevant to establishing liability are (1) how much each class member was charged in initial fees; and (2) what percentage of each class member's individual payments were retained by CLA as fees for services rendered. These questions can be answered quickly and decisively by examining a single page of each class member's standard form contract with CLA. With regard to proving damages, the individualized questions are (1) the total amount of payments made by each class member to CLA; and (2) the proportion of those payments which were ultimately distributed to creditors. These individualized questions can also be answered relatively quickly by examining each class member's billing history. At

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 30

1    bottom, the class members' claims present significant overarching questions which

2    can be answered rather mechanically with individualized proof.  Thus, the Court

3    finds that questions common to all class members predominate over individualized

4    questions.

5                    2.  *Is Class Adjudication Superior to Individual Actions?*

6              In considering whether class adjudication is superior to separate individual

7    actions, a court must determine "whether the objectives of the particular class

8    action procedure will be achieved in the particular case."  *Hanlon v. Chrysler*

9    *Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).  In conducting this superiority

10   analysis, a court must consider, *inter alia*, (1) the interests of individual class

11   members in pursuing their claims separately; (2) the extent of any existing

12   litigation concerning the same subject-matter; (3) the desirability of concentrating

13   the litigation in a particular forum; and (4) the feasibility of managing the case as a

14   class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  A court's consideration of these

15   factors must "focus on the efficiency and economy elements of the class action so

16   that cases allowed under subdivision (b)(3) are those that can be adjudicated most

17   profitably on a representative basis."  *Zinser v. Accufix Research Inst., Inc.*, 253

18   F.3d 1180, 1190 (9th Cir. 2001) (quotation and citation omitted).  Stated

19   differently, a court evaluating a motion to certify a Rule 23(b)(3) class must

20

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 31

perform "a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

Here, a balancing of the factors identified above weighs strongly in favor of adjudication on a class-wide basis. First, it does not appear that each class member has a significant interest in litigating his or her claims separately. Given that the value of each individual class member's claim is relatively small,[5] the cost of pursuing such claims individually would likely exceed the value of any potential recovery. Under these circumstances, class adjudication is generally preferable. *See Zinser*, 253 F.3d at 1191 (noting that certification is generally proper when class members will be "unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure").

Second, the Court is unaware of any other pending litigation concerning the same subject-matter between Defendants and potential class members. Thus, it appears that allowing this case to move forward as a class action would "serve the

_____

[5] Based upon the materials submitted by the parties, the Court estimates that the majority of class members have claims for damages ranging from approximately $5,000 to $10,000. In making this estimate, the Court does not express any opinion as to the appropriate measure of damages for a *per se* violation of the CPA premised upon a violation of the DAA's statutory fee restrictions.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 32

1   purpose of assuring judicial economy and reducing the possibility of multiple

2   lawsuits." *Zinser*, 253 F.3d at 1191.

3        Third, the Court finds that concentrating this litigation in the Eastern District

4   of Washington is appropriate.  Because the proposed class is limited to Washington

5   residents, there is no reason to decline class certification on the ground that another

6   forum would be more convenient.  To the contrary, the Eastern District is an

7   entirely logical place for the case to proceed.

8        Finally, there are no significant procedural barriers to managing this case as

9   a class action.  Indeed, it appears that managing this case as a class action will be

10  relatively straightforward and will require far fewer judicial resources than

11  managing separate suits.  As discussed above, this case presents one overarching

12  question: whether Defendants violated the DAA by charging Washington

13  customers fees in excess of (1) $25.00 in initial fees; and/or (2) 15% of any

14  individual payment.  Proving these violations will require nothing more than a

15  cursory examination of each class member's standard form contract and/or billing

16  history.  The interests of judicial economy require that this examination be

17  undertaken at the same time and in the same proceeding.

18  **III.    Motion to Strike Gusmano Declaration**

19       Defendants have moved to strike the Declaration of Joseph Gusmano (ECF

20  No. 30) on the grounds of relevance and lack of foundation.  The majority of Mr.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 33

1  Gusmano's declaration is devoted to explaining the business practices of a

2  different legal entity (Persels & Associates, LLC) and is therefore irrelevant to the

3  issues presented in the instant motions.  Although Mr. Gusmano avers that CLA

4  followed similar practices, the Court finds that he lacks sufficient personal

5  knowledge to offer such testimony.  At bottom, Mr. Gusmano's only apparent

6  knowledge of CLA's business practices stems from the fact CLA "worked out of

7  the same office and utilized many of the same personnel, policies, training manuals

8  and procedures as Persels [& Associates]."  ECF No. 30 at ¶ 5.  Given that Mr.

9  Gusmano was never directly employed by CLA, he may not offer detailed

10  testimony about CLA's business practices.  Accordingly, paragraphs six (6)

11  through thirty-five (35) of the Gusmano Declaration will be stricken.

12  **ACCORDINGLY, IT IS HEREBY ORDERED:**

13      1.  Defendants' Motions for Summary Judgment (ECF Nos. 45 and 59) are

14          **DENIED**.

15      2.  Plaintiff's Motion for Class Certification (ECF No. 25) is **GRANTED** as

16          to Plaintiff's claims for *per se* violations of the CPA, and **DENIED** as to

17          Plaintiff's claims for non-*per se* violations of the CPA, breach of

18          fiduciary duty, and injunctive relief.

19      3.  The Court certifies the following class pursuant to Rule 23(b)(3) and

20          Rule 23(c)(5):

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 34

All persons while residing in Washington who paid for debt adjusting services pursuant to a contract with Consumer Law Associates, LLC, which services were also implemented, managed or performed by EFA Processing L.P. and/or DR (Debt Relief) Options, LLC, during the period from April 18, 2007 through the date of final disposition of this action and who are not currently under contract for such services.

4.  The Court **provisionally** certifies the following class pursuant to Rule 23(b)(3) and Rule 23(c)(5):

> All persons while residing in Washington who paid for debt adjusting services pursuant to a contract with Consumer Law Associates, LLC, which services were also implemented, managed or performed by EFA Processing L.P. and/or DR (Debt Relief) Options, LLC, during the period from April 18, 2007 through the date of final disposition of this action and who are presently under contract for such services.

5.  Darrell Scott and Matthew Zuchetto of The Scott Law Group, PS, and Toby Marshall of Terrell Marshall Daudt & Willie, PLLC, are appointed as class counsel pursuant to Rule 23(g).

6.  The Court designates named Plaintiff Kenneth R. Brown as class representative for the former client subclass; a representative for the current client subclass will be designated at a later date pending approval of such representative by the Court.

7.  Class counsel shall identify and submit for the Court's approval a named representative for the current client subclass no later than **July 23, 2012**. Defendants shall have until **August 3, 2012** to file a response.  Class counsel shall have until **August 10, 2012** to file an optional reply.

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 35

8. With ten (10) days from the date of this order, class counsel shall serve and file a proposed "Notice" to members of both subclasses for the Court's review and approval. This "Notice" shall comply with the requirements of Rule 23(c)(2)(B).

9. Defendants shall have ten (10) days from service of the proposed "Notice" to serve and file any objections to the same.

10. Class counsel shall have five (5) days from service of any objections to serve and file a reply to the same.

11. Defendants' Motion to Strike the Declaration of Joseph Gusmano (ECF No. 91) is **GRANTED** as to ¶¶ 6-35 of ECF No. 30.

12. Plaintiff's unopposed Motion to Amend Complaint (ECF No. 124) is **GRANTED**. Plaintiff shall file his Amended Class Action Complaint forthwith.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 15th day of June, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, CERTIFICATION OF PLAINTIFF CLASS AND MOTION TO STRIKE ~ 36